UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAKESHA NORINGTON, | ) |
| | ) |
| Petitioner, | ) |
| | ) CAUSE NO. 3:12-CV-522 RM |
| vs. | ) |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

OPINION AND ORDER

Lakesha Norington,[1] a *pro se* prisoner, filed a habeas corpus petition challenging a disciplinary proceeding at the Westville Control Unit ("WCU"). On February 2, 2012, Ms. Norington was found guilty of disorderly conduct under cause number WCU 12-01-0499. The charge was initiated on January 20, 2012, when Corrections Officer Sam Karallus prepared a conduct report stating, "On the above date an[d] approx. time I ofc Karallus noticed that offender Norington, Shawntrell # 138726 was flooding his cell. I then gave this offender a direct order to stop which he did not do [ ]." (DE 11-1.) The same day, Corrections Officer W. Collier prepared the following witness statement: "I ofc Collier noticed offender Norington, Shawntrell #138726 flood his cell on the above date and approx. time." (DE 11-3.)

On January 27, 2012, Ms. Norington was notified of the charge and given a copy of the conduct report. (DE 11-2.) She pleaded "no contest," asked for a lay advocate, and did

---

[1] The petitioner, whose legal name is Shawntrell Marcel Norington, was born a male but identifies herself as a female and refers to herself with female pronouns. The court does so here out of courtesy.

not request any physical evidence. (DE 11-2.) She requested a witness statement from Officer Collier about whether he saw Officer Karallus give her a direct order to stop flooding her cell. (*Id.*) A statement was later obtained from Officer Collier, who responded, "No, report stands as written." (DE 11-4.) Before the hearing, the hearing officer reviewed video footage of the incident, and reported as follows: "Upon review of the video footage, it is observed that water is rushing out of C3-107. This water flows into other cells and causes staff to stop performing their daily duties in order to clean up the water." (DE 11-6.)

A disciplinary hearing was held on February 2, 2012. (DE 11-7.) Ms. Norington submitted a written statement arguing there was insufficient evidence that she had disobeyed a direct order or that she had engaged in any violent conduct, which she believed was necessary to support the charge. (DE 11-8.) The hearing officer found her guilty, revoked 50 days of earned time credits, and imposed a previously suspended sanction demoting her to a lower credit-earning class.[2] (DE 11-7.) Ms. Norington appealed to the facility head and final reviewing authority, but her appeals were denied. (DE 11-11 to 11-14.) Thereafter, she filed the present petition.

When prisoners lose earned time credits in prison disciplinary hearings, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charges; (2) an opportunity to be heard before

---

[2] The suspended sanction stemmed from WCU 11-08-0586, in which Ms. Norington was found guilty of disorderly conduct after flooding her cell on another occasion. She is challenging that guilty finding in a separate habeas petition. *Norington v. Superintendent*, 3:12-CV-171 (N.D. Ind. filed Apr. 10, 2012).

2

an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 564-566 (1974). To satisfy due process, there must also be "some evidence" in the record to support the hearing officer's determination. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Ms. Norington first challenges the sufficiency of the evidence. In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. at 455-456. The court will overturn the hearing officer's decision only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." Henderson v. United States Parole Comm'n, 13 F.3d 1073, 1077 (7th Cir. 1994).

Ms. Norington argues there was insufficient evidence that she engaged in violent conduct or disobeyed an order to stop flooding her cell. The disciplinary charge at issue is B236, disorderly conduct, which under the Adult Disciplinary Procedures ("ADP") is defined as "exhibiting disruptive and/or violent conduct which disrupts the security of the

3

facility or other area in which the offender is located." (DE 11-16 at 1.) Contrary to Ms. Norington's argument, there didn't have to be any evidence she acted violently or disobeyed an order. The only relevant question is whether she was disruptive, and on this point the evidence is sufficient. Two correctional officers witnessed her flooding her cell, Ms. Norington pleaded "no contest" to the charge, and the video of the incident shows water "rushing out" of her cell. This evidence satisfies the some evidence test. *See* Hill, 472 U.S. at 457 (evidence was sufficient even though it was "meager" and there was no direct evidence of guilt); Moffat v. Broyles, 288 F.3d 978, 988 (7th Cir. 2002) (witness statements constituted some evidence); McPherson, 188 F.3d at 786 (7th Cir. 1999) (conduct report provided some evidence to support disciplinary determination).

Ms. Norington also claims she was denied the right to an impartial decision-maker. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. Id. There is no indication from the record that the hearing officer who decided Ms. Norington's case was also involved in the underlying incident leading to the charge. Instead, Ms. Norington argues that the hearing officer was biased because he was in the room when she was screened on the charge. Even if true, this would not establish the type of bias that violates federal due process. Piggie v. Cotton, 342 F.3d at 666. Ms. Norington believes that the hearing officer violated internal prison policy by being present

4

during screening, but a violation of prison policy would not provide a basis for granting federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas relief cannot be granted for violations of state law); Hester v. McBride, 966 F. Supp. 765, 774-75 (N.D. Ind. 1997) (claim premised on a violation of the ADP was not cognizable in federal habeas proceeding).

Ms. Norington also claims that her due process rights were violated because she wasn't allowed to view the video of the incident. Unlike a criminal defendant, a prisoner has no right to confront adverse witnesses or evidence at a disciplinary hearing. Wolff v. McDonnell, 418 U.S. at 568. Thus, she didn't have a right to view the video simply because it was used as evidence in her case. A prisoner has a limited right to present exculpatory evidence in his or her defense, consistent with correctional goals and safety. Id. at 566. But Ms. Norington doesn't argue, and nothing in the record suggests, that the video was exculpatory. Instead, the hearing officer reported that the video showed water pouring out of Ms. Norington's cell, causing a disruption in her unit. Even if the video had some exculpatory value, the hearing officer viewed the video and considered it in reaching his decision, which was all that due process required. S*ee* White v. Ind. Parole Bd., 266 F.3d 759, 768 (7th Cir. 2001) (prisoner had no due process right to view videotape that was considered by the disciplinary board). Ms. Norington also believes prison policies were violated in connection with the video evidence, but as stated, this would not provide a basis for overturning her disciplinary conviction. Estelle v. McGuire, 502 U.S. at 67-68. Her

other claims premised on violations of the ADP, regarding the number of decision-makers in her case and the sanctions that were imposed, are unavailing for the same reason. *See* id.

For the reasons set forth above, the petition (DE 1) is DENIED.

SO ORDERED

ENTERED: April  2 , 2013.　　　　　　　　　  /s/ Robert L. Miller, Jr.  
　　　　　　　　　　　　　　　　　　　　　　Judge  
　　　　　　　　　　　　　　　　　　　　　　United States District Court